JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Thomas Lee, appeals from the judgment of the Common Pleas Court, rendered after a bench trial, finding him guilty of theft and sentencing him to nine months incarceration. We affirm.
 {¶ 2} In July 2004, the Grand Jury indicted Lee and five co-defendants in a 16-count indictment on charges related to bank fraud. Lee was indicted on four of the sixteen charges: forgery in violation of R.C. 2913.31, uttering in violation of R.C.2913.31, theft in violation of R.C. 2913.02, and receiving stolen property in violation of R.C. 2913.51.
 {¶ 3} Lee waived his right to a jury and the case proceeded to a bench trial. The first witness for the State, Richard J. Fox, testified that in October 2003, he was employed by Premier Restaurant Management Company ("Premier"). Lee then stipulated to the remainder of Fox's expected testimony: that he (Lee) was never employed by Premier and never had legitimate access to checks issued by Premier or to its checking account routing number, and that State's Exhibit 1, a check drawn on Premier's account at Fifth Third Bank, made payable to LaKeya D. Slade in the amount of $9,542, was a forgery.
 {¶ 4} Lee also stipulated to the expected testimony of Gary Belluomini, a criminal investigator with Fifth Third Bank: that Belluomini had reviewed the bank records of Premier's account, that State's Exhibit 1 was a forgery and not a legitimate check drawn on Premier's account, and that Fifth Third Bank had lost $9,542, the amount of the check, when it was required to replace that amount in Premier's account.
 {¶ 5} The State's final witness, LaKeya Slade, was indicted on one count of uttering in connection with the fraud and reached a plea agreement with the State. As part of her plea agreement, she testified for the State.
 {¶ 6} Slade testified that due to her disability, she receives a monthly Social Security check in the amount of $564. The check is directly deposited into her checking account at Fifth Third Bank.
 {¶ 7} According to Slade, Lee was aware that she had a checking account with Fifth Third. In October 2003, he approached her and asked her to deposit a check into her account and then withdraw the money for him. Slade testified that Lee was with another male named Wilford Pryor, who Lee said was his uncle. Slade testified that she endorsed the check and then gave Lee and his uncle her ATM card so they could deposit it. On three or four subsequent occasions, Slade, accompanied by Lee, withdrew a total of nearly $9,000 from her account and gave the money to Lee. Slade identified State's Exhibit 2, a check dated October 28, 2003 drawn on her account in the amount of $7,200 and made payable to "Cash," as a check she wrote to withdraw money from her account for Lee. She testified that Lee was supposed to pay her $300 for participating in the scheme, but never did so.
 {¶ 8} Slade identified her signature on the back of State's Exhibit 1, the forged check, but denied seeing the front of the check before. On cross-examination, Slade testified that State's Exhibit 1 was not the check she deposited into her account for Lee. She testified that the check she deposited for Lee listed his uncle's name as payee, not hers.
 {¶ 9} At the conclusion of the State's case, the trial court granted Lee's Crim.R. 29 motion for acquittal regarding the forgery charge.
 {¶ 10} Lee then called Detective Michael Debeljak in his defense. Debeljak testified that on April 3, 2004, he took a statement from Slade, in which she stated that Lee had repaid her the money deducted from her account as overdraft charges. Debeljak testified further that Slade initially told him that she had endorsed the back of the check from Lee without looking at the front, but later told him that "possibly the check was made out to a different person;" specifically, Lee's uncle, Wilford Pryor.
 {¶ 11} The trial judge subsequently found Lee guilty of theft but not guilty of uttering and receiving stolen property. In light of his prior criminal record, the judge sentenced Lee to nine months incarceration.
 {¶ 12} In his first assignment of error, Lee argues that the trial court erred in denying his Crim.R. 29(A) motion for acquittal regarding the theft count because the evidence was insufficient to sustain his conviction.
 {¶ 13} Crim.R. 29(A) provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 14} R.C. 2913.02 provides that "no person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * without the consent of the owner or person authorized to give consent. * * * Whoever violates this section is guilty of theft."
 {¶ 15} Lee first argues that the evidence was insufficient to indicate that he exerted control over the property of another because there was no evidence that he had access to Slade's account and the check at issue was either made out to Slade or to Wilford Pryor, but not to him. He argues further that there was no evidence that he "knowingly" exerted control over the property of another with intent to deprive the owner of the property because there was no evidence that he knew the check was not legitimate.
 {¶ 16} The State's theory of the case was that Lee was complicit with others, including Slade, in the commission of the offense. R.C. 2923.03(A) provides:
 {¶ 17} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 18} "(1) Solicit or procure another to commit the offense;
 {¶ 19} "(2) Aid or abet another in committing the offense;
 {¶ 20} "(3) Conspire with another to commit the offense * * *
 {¶ 21} "(4) Cause an innocent or irresponsible person to commit the offense."
 {¶ 22} LaKeya Slade testified unequivocally that it was Lee's idea for her to cash the bogus check and to withdraw large sums of money from her account for Lee. She testified further that Lee was supposed to pay her $300 for her part in the scheme. In light of this testimony, it is immaterial who was designated as the payee on the check. Whether the check was made out to Lee's uncle or to Slade, this evidence, if believed, is sufficient to convince a reasonable juror, beyond a reasonable doubt, that Lee aided and abetted Slade in committing the theft offense.
 {¶ 23} Appellant's first assignment of error is therefore overruled.
 {¶ 24} In his second assignment of error, Lee contends that his theft conviction was against the manifest weight of the evidence.
 {¶ 25} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins (1997), 78 Ohio St.3d 380, 390. When considering an appellant's claim that the conviction is against the weight of the evidence, a reviewing court sits essentially as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." Thompkins, supra at 387, quoting Tibbs v. Florida (1982), 457 U.S. 31, 42. The reviewing court must examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue of fact for the trier of fact to resolve. State v. Thomas (1982),70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the jury, in resolving conflicts in the evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 26} Lee contends that his conviction was against the manifest weight of the evidence because there were some inconsistencies in Slade's testimony. For example, Slade initially testified that she entered into the scheme with Lee only "out of the kindness of her heart to help a friend," but then admitted that Lee was to pay her $300 for her part in the scheme. Also, although Slade testified during the trial that she never saw the front of the forged check that was deposited into her account, she told Detective Debeljak during his interview with her that the check could have been made out to Lee's uncle, Wilford Pryor. Additionally, there were some inconsistencies in Slade's testimony regarding how many withdrawals she made from her account for Lee.
 {¶ 27} We do not find these inconsistencies dispositive. Although Slade was confused and inconsistent on some nonessential details, she testified consistently that it was Lee's idea for her to cash the bogus check and that he was the one who benefited the most financially by her doing so. Detective Debeljak confirmed that Slade's trial testimony regarding who initiated the scheme was consistent with what she had originally told him during his investigation of the case:
 {¶ 28} "Q. [Prosecutor] Was she ever at any time inconsistent with regard to the statement that Thomas D. Lee was involved with a check being deposited in her account in October for a large sum of money?
 {¶ 29} "A. [Debeljak] No.
 {¶ 30} "Q. [Prosecutor] Was she ever at any time during your interviews inconsistent with the statement that on one or more occasions she drew out and gave to Thomas Lee large sums from her account which were the result of that check?
 {¶ 31} "A. [Debeljak] No."
 {¶ 32} Although Lee attacks Slade's inconsistencies, he points to nothing in the record which rebuts her unequivocal testimony regarding his initiation of and participation in the scheme.
 {¶ 33} After reviewing the entire record, weighing the evidence, and considering the credibility of the witnesses, we are not persuaded that the trier of fact lost its way and created such a miscarriage of justice that Lee's conviction must be reversed.
 {¶ 34} Appellant's second assignment of error is overruled. Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Corrigan, J., concur.